**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
_____
                               :
JOSEPH NATHAN SINGLETARY, III, :
                               :   Civil Action No.
         Plaintiff,            :   11-0392 (RMB)
                               :
         v.                    :   O P I N I O N
                               :
BURLINGTON COUNTY JAIL et al., :
                               :
         Defendants.           :
_____:
```

**Bumb**, District Judge:

Plaintiff Joseph Nathan Singletary, III ("Plaintiff"), an inmate confined at the Southern State Correctional Facility, Delmont, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.     **BACKGROUND**

Plaintiff named the following entities and persons as Defendants in this matter: Burlington County Jail, Warden Cox, Captain Larkin, Captain Artist, Lieutenant Laaf, Lieutenant Farria, Sergeant Zoll, Sergeant Nunn, Sergeant Eddy, Medical Department (of, presumably, Burlington County Jail), a certain Stacy (whose last name is unknown to Plaintiff), a certain Susan (whose last name is unknown to Plaintiff), a certain Tom (whose last name is unknown to Plaintiff), a certain Roxxano (whose last name is unknown to Plaintiff), a certain Addrianna (whose last name is unknown to Plaintiff), a certain Nicole (whose last name is unknown to Plaintiff) and a certain Maurice (whose last name is unknown to Plaintiff). See Docket Entries Nos. 1 and 1-3.

The Complaint states that the Warden was named as a Defendant because he is "in charge" of Burlington County Jail, while Captains Larkin and Artist were named as Defendants because they were, allegedly, aware of a certain incident and Plaintiff, allegedly, gave them his "medical slips" (which, the Court presumes, were Plaintiff's requests to be seen by medical personnel) and his administrative grievances. See Docket Entry No. 1, at 4.

A page submitted jointly with the Complaint: (a) states that one of Plaintiff's fingers is in pain, that a certain doctor stated that it is/was broken "in more place's than one," and that x-rays of that particular finger show that the amount of "breaks" keeps

increasing from one x-ray to another, see Docket Entry No. 1-3, at 1; and (b) clarifies that Lieutenant Laaf was named as a Defendant because he was informed of Plaintiff's submission of requests for medical attention, Lieutenant Farria was named as a Defendant because he was the person through whom Plaintiff submitted administrative grievances, Sergeant Zoll was named as a Defendant because he was the person through whom Plaintiff submitted his medical slips, Sergeants Nunn and Eddy were named as Defendants because they were aware of a certain fight and saw Plaintiff's finger swell but did not take Plaintiff to a medical department, and Maurica, Stacy and Addrianna were named as Defendants because, upon examination of Plaintiff's swollen finger, they provided him with an ice pack rather than calling for a doctor and/or registering Plaintiff for a "sick-call" (which, the Court presumes, implies either a visit by a doctor to Plaintiff's cell or Plaintiff being called for a doctor examination to the Jail's medical services department).  See Docket Entry No. 1-3.

From the foregoing, the Court deduces that, on a certain unspecified date, Plaintiff, while being housed at Burlington County Jail, got engaged in a fight (with either other inmates or prison officials) and, during that fight, seemingly injured his finger.  The finger apparently became swollen as a result of the injury. Apparently, Plaintiff wishes to allege that the fight was observed by Sergeants Nunn and Eddy, who might have seen that

Plaintiff's finger got swollen but who, seemingly, did not accompany Plaintiff to the medical services department. Therefore, Plaintiff, it seems, went to the medical department on his own and, there, he was, apparently, seen by a certain nursing staff, who examined his finger and, allegedly, concluded that the finger was merely bruised, which prompted these staffers to recommend Plaintiff to apply ice to his finger in order to reduce swelling, while Plaintiff would have preferred to have his finger examined by a doctor.

In also appears that Plaintiff wishes to assert that his finger remained either swollen or in pain, or both, and therefore he submitted requests to be seen by a medical professional other than a nurse. When his requests to be seen were, allegedly, denied, Plaintiff submitted administrative grievances. Eventually, it seems, Plaintiff's finger was examined by a doctor, who determined that the bone within the finger was fractured. X-rays of Plaintiff's finger were taken on a continuous basis ever since to monitor the heeling of the fracture.[1]

## II. STANDARD OF REVIEW

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Erickson v. Pardus, 551

---

[1] Plaintiff's assertion that the number of fractures within the bone of Plaintiff's finger keeps increasing from one x-ray to another.

U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965

> n.3. . . . "[T]he threshold requirement of Rule
> 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to
> relief.'" Id. at 1966. [Hence] "factual allegations
> must be enough to raise a right to relief above the
> speculative level." Id. at 1965 & n.3. . . . [Indeed,
> it is not] sufficient to allege mere elements of a
> cause of action; instead "a complaint must allege
> facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . .
> demands more than an unadorned ["]the-defendant-
> unlawfully-harmed-me["] accusation. [Twombly, 550
> U.S.] at 555 . . . . A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at
> 555. Nor does a complaint suffice if it tenders
> "naked assertion[s]" devoid of "further factual
> enhancement." Id. at 557. . . . A claim has facial
> plausibility [only] when the plaintiff pleads factual
> content . . . . Id. at 556. [Moreover,] the
> plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Id. [Indeed, even w]here a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'"
> Id. at 557 (brackets omitted). [A fortiori,] the tenet
> that a court must accept as true all of the
> allegations contained in a complaint is inapplicable
> to legal conclusions [or to t]hreadbare recitals of
> the elements of a cause of action, supported by mere
> conclusory statements [,i.e., by] legal conclusion[s]
> couched as a factual allegation [e.g.,] the
> plaintiffs' assertion of an unlawful agreement [or]
> that [defendants] adopted a policy "'because of,' not
> merely 'in spite of,' its adverse effects upon an
> identifiable group." . . . . [W]e do not reject these
> bald allegations on the ground that they are
> unrealistic or nonsensical. . . . It is the

> conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. <u>Twombly</u>, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [<u>i.e.</u>, as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

### III. <u>NOT VIABLE CLAIMS</u>

#### A. *Respondeat Superior* Claim

Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985), and – in addition – supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' personal involvement in the alleged wrongs. <u>See</u> <u>Iqbal</u>, 129 S. Ct. 1937; <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Claims against the supervisors are subject to dismissal to the degree they are based solely on the <u>respondeat superior</u> theory. <u>See</u> <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (because <u>respondeat superior</u> or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation – even if it is operation under contract with

the state – cannot be held liable for the acts of its employees and agents under those theories).

Here, Plaintiff asserted that the Warden is liable to him because the Warden was "in charge" of Burlington County Jail. This claim, unambiguously based solely on the <u>respondeat superior</u> theory, is subject to dismissal with prejudice.

### B. Burlington County Jail and Medical Department

Here, Plaintiff named, among Defendants in this action, Burlington County Jail and its medical department. However, these entities are not cognizable as "persons" subject to suit under 42 U.S.C. § 1983. See <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 68-70 (1989) (holding that States and governmental entities considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); <u>Grabow v. Southern State Correctional Facility</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983). Therefore, Plaintiff's claims against the Jail and its medical department will be dismissed with prejudice.

### IV. TIMELINESS AND EIGHTH AMENDMENT CLAIMS

### A. Timeliness

Here, Plaintiff did not clarify when the relevant events, such as the alleged fight, the alleged injury to his finger and the alleged insufficient medical treatment, took place. Plaintiff's

information available from the Department of Corrections website indicates that Plaintiff was sentenced on May 13, 2005, in the Burlington County part of the Superior Court of New Jersey, Law Division; he will become eligible for parole on October 15, 2012. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1218351&n=0>>. Since Plaintiff is now housed at the Southern State Correctional Facility, but he asserts that he was housed at Burlington County Jail from the time of his pre-trial confinement and until August 16, 2010, see Docket Entry No. 1-2, at 2, the Court cannot determine timeliness of Plaintiff's claims which, apparently, accrued during his, seemingly over five-year, Burlington County Jail confinement.

Since, as the discussion below illustrates, Plaintiff's Complaint is subject to dismissal without prejudice, Plaintiff will be directed to specify, in his amended complaint, when the alleged events took place.

**A.    Eighth Amendment**

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106. To satisfy the first prong of the Estelle inquiry,

the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. See id. at 347. For example, pursuant to Estelle, if "unnecessary and wanton infliction of pain" results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment. See Estelle, 429 U.S. at 105. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. See, e.g., Archer v. Dutcher, 733 F.2d 14, 16 (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid for months in order to make her suffer).

Hence, a medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays that deny medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, inconsistencies or differences in medical diagnoses, relatively short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice,

or to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures cannot amount to cruel and unusual punishment. See <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims); <u>Alsina-Ortiz v. Laboy</u>, 400 F.3d 77 (1st Cir. 2005)(a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); <u>Smith v. Sator</u>, 102 Fed. Appx. 907 (6th Cir. 2004) (where a prisoner alleged that defendants did not provide various specialized medical tests that the prisoner found to be necessary based on his reading of medical literature, the court held that the complaint was frivolous because refusal to provide specialized tests amounted to nothing more than a difference of opinion regarding the medical diagnosis and treatment and did not rise to the level of an Eighth Amendment violation); <u>Lopez v. Kruegar</u>, 1990 U.S. Dist. LEXIS 6808 (E.D. Pa. June 4, 1990) (where plaintiff stated that he was receiving medication but felt that additional medical tests should be taken, his allegations were directed at the wisdom or quality of treatment and did not state a claim); <u>Coleman v. Crisp</u>, 444 F. Supp. 31 (W.D. Okla. 1977) (difference of opinion between plaintiff and doctors concerning availability of treatment and medication did not establish

violation of constitutional right or sustain claim).

Here, Plaintiff's allegations fail to state a cognizable claim. While Plaintiff asserts that Captains Larkin and Artist violated his rights by being aware of the fight and being the persons to whom Plaintiff handed his medical slips and administrative grievances, these Defendants' capacity to observe the fight or the act of their passing of medical slips to the persons processing medical requests cannot render them deliberately indifferent to Plaintiff's medical needs, even if the Court is to presume, <u>arguendo</u>, that a swollen finger qualifies as a serious medical need within the meaning of the Eighth Amendment.

Indeed, at no point does Plaintiff assert that he actually asked these Defendants for medical help (or for help with obtaining medical attention), and that they refused him such help.

Analogously, Lieutenants Laaf and Farria cannot be deemed deliberately indifferent to Plaintiff's medical needs simply on the grounds of being aware of the fact that Plaintiff was submitting medical slips and administrative grievances: at no point does the the Plaintiff assert that he actually asked these Defendants for medical help (or for help with obtaining medical assistance), and that they refused him such help/assistance.

Plaintiff's claims against Sergeants Zoll, Nunn and Eddy also fall short of alleging a viable Eighth Amendment claim: an officer cannot become liable for deliberate indifference to one's medical

need in the event the officer can just observe a sign of what might be indicative of an inmate having a minor injury, or if the officer can just see that an inmate is submitting, for filing or further passage, medical slips or grievances.

Moreover, the alleged decision of Maurica, Stacy and Addrianna not to call a doctor but to merely offer Plaintiff ice for his swollen finger cannot amount to a claim of constitutional magnitude. See, e.g., Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *37 (D.N.J. June 26, 2006) (noting that there is no constitutional right to "have a doctor at Plaintiff's disposal," citing McNeil v. Redman, 21 F. Supp. 2d 884 (C.D. Ill. 1998), for the proposition that there is "no constitutional right to see a doctor on demand; the decision whether to summon a doctor, like the question of whether a certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" quoting, in turn, Estelle, 429 U.S. at 97); see also White v. Napoleon, 897 F.2d 103 (mere disagreements over medical judgment or treatment do not state Eighth Amendment claims).

Finally, Plaintiff's naming of other persons as defendants without elaborating on these defendants' involvement in the alleged wrongs cannot meet the pleading requirement set forth in Iqbal.

Therefore, as drafted, Plaintiff's Complaint is subject to dismissal. However, being mindful of Plaintiff's pro se status and

recognizing that Plaintiff might have inadvertently omitted to state the facts indicative of a plausible Eighth Amendment claim, the Court will dismiss Plaintiff's Complaint without prejudice, and will allow Plaintiff to file an amended pleading elaborating on Plaintiff's claims and specifying the dates of the relevant events.[2]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint will be dismissed.  Plaintiff's claims not amenable to cure by amendment will be dismissed with prejudice, while the remaining claims will be dismissed with leave to amend.

An appropriate Order accompanies this Opinion.

---

[2] The Court strongly encourages Plaintiff under pain of dismissal of his Complaint with prejudice, to elaborate on the facts of Plaintiff's claims in detail, by stating the exact events, when the injury occurred, what Plaintiff did upon being injured, when and whom did he ask for help and in what exact terms, what were the responses he received, what medical care was eventually provided to him and when (e.g., when did the particular examination of his finger took place, during which the finger was x-rayed, when did the fracture was determined, when the follow-up x-rays were taken, what treatment was offered, etc.)  In addition, taking notice of Plaintiff's hard-to-understand penmanship, the Court strongly encourages Plaintiff to hand-print, rather than script, his amended pleading in order to make the content of that amended pleading as readable as possible.

<pre>
                                    s/Renée Marie Bumb
                                    <b>RENÉE MARIE BUMB,
                                    United States District Judge</b>
</pre>

Dated: July 14, 2011